406 S.E.2d 721

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Donald E. BESS, Jr., Defendant Below, Appellant.**

**No. 19906.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided June 27, 1991.

C. Cooper Fulton, Kanawha County Public Defender Corp., Charleston, for appellant.

Joanna Tabit, Sr. Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This case involves the appeal of Donald Bess from the jury verdict of the Fayette County Circuit Court which convicted him of daytime burglary (W.Va.Code § 61–3–11 (1973)) and felony murder (W.Va.Code § 61–2–1 (1987)). The court sentenced the appellant to life without mercy on April 10, 1990, on the felony murder conviction and an indeterminate term of one-to-fifteen years for the burglary conviction. However, on May 23, 1990, the trial court amended its previous order and vacated the daytime burglary sentence because it was the underlying felony in the felony murder conviction.

On August 30, 1989, Marjorie Riley, age seventy-six, bled to death in her home after being stabbed three times and suffering several blows to the head. It is estimated that she died thirty minutes to an hour after the attack. Missing from the home was a .25 caliber pistol, some loose change, and coal company scrip, part of Mrs. Riley's collection.

The police first connected Mr. Bess to the crime when a neighbor claimed that a few days before the murder, he had seen a suspicious vehicle matching the appellant's vehicle parked on a dirt road just above the victim's home. However, that car was sold by the appellant several days after the murder. The man who bought the car, Mr. Lovejoy, revealed that he had also recently obtained a .25 caliber pistol from a man named Phillips, and that Mr. Lovejoy had then sold it to his nephew. The police questioned Mr. Phillips, the man who sold the pistol, who stated that he had bought the gun from the appellant. The serial number on the gun in question matched the serial number of Mrs. Riley's gun.

The coal company scrip was eventually linked to the appellant by the appellant's father. The appellant's father called the police, stating that the appellant's girl friend had told him that Donald had recently sold some scrip to a coin collector. The collector in turn sold the scrip to a part-time dealer, who gave the evidence to the police.

The appellant was arrested on October 27, 1989. The appellant was taken to Kanawha County Magistrate Court, where he was met by two Fayette County deputies, Officers Canterbury and Moses, as well as Chief Workman. The appellant was advised of his rights and was fingerprinted. He did not request that an attorney be provided. The appellant, along with Officer Canterbury, went to wash the ink from his hands. While closeted together in the restroom, the appellant contends that he was threatened into confessing that he killed Mrs. Riley. At trial, Officer Canterbury countered that he merely discussed the evidence that had been gathered and mentioned that he had spoken to the appel-

lant's parents. It is uncontested that the appellant then began to cry and confessed.

After they left the restroom, the appellant was again advised of his rights, which he again waived. The appellant then confessed, on tape, to murdering Marjorie Riley, as well as breaking into her home and stealing the gun and scrip. The appellant contends that this confession was coerced and thus, should not have been used to convict him.

Six days later, the appellant and his appointed counsel agreed to accompany the police to the crime scene in order to locate the murder weapon. The appellant's description of what happened was again taped. The appellant claimed that after he stabbed the victim, he threw the murder weapon away as he was running up the hill. The weapon was never found.

On March 5, 1990, the case went to trial. During an in camera hearing, the court determined that the appellant's inculpatory statements were admissible. Thereafter, the jury found the appellant guilty of daytime burglary and felony murder. He was sentenced to one to fifteen years on the burglary conviction and to life without mercy on the felony murder conviction on April 10, 1990. The burglary sentence was rescinded on May 23, 1990, because it was the underlying felony for the felony murder conviction. The appellant brings this appeal from the final order of the Circuit Court of Fayette County.

On appeal, the appellant contends that the trial court committed reversible error in failing to suppress the statements as being involuntarily induced. The appellant also argues ineffective assistance of counsel at the trial level and delayed presentment before a magistrate.[1]

## I.

The appellant argues that the initial confession was not voluntary and thus, not admissible. The test for determining whether a confession is voluntary is found in *State v. Persinger*, 169 W.Va. 121, 129, 286 S.E.2d 261, 267–8 (1982). In *Persinger*, the Court held that "the voluntariness of a confession is an inquiry that must be gauged by the totality of the circumstances under which it was given including the background, experience and conduct of the accused." Of course, the State must prove, by a preponderance of the evidence, that the confessions were voluntary. Syl. pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975).

However, the mere fact a defendant voluntarily confesses does not instantly transform it into a suppressible statement. In *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S.Ct. 321, 46 L.Ed.2d 313, 320 (1975), the United States Supreme Court explained that "a blanket prohibition against the taking of voluntary statements ... regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests."

In the present case, the appellant cooperated and gave three separate confessions, with *Miranda* warnings being given at least twice. No evidence was presented which gives us reason to believe he did not understand the warnings or that he was threatened into confessing.[2] In fact, the appellant was so helpful that he voluntarily accompanied the investigating officers to the crime scene. No claim of coercion was made following that confession, and the

---

1. The appellant also alleges that no hearing was held on the admissibility of the confessions by the trial court below. However, the transcript makes it clear that an in camera admissibility hearing was held on all three of the appellant's statements. A close review of the transcript reveals that Officer Canterbury testified about the appellant's initial statement in the restroom, as well as both subsequent confessions. Thus, the admissibility of all three confessions was reviewed by the court.

2. The testimony is uncontradicted that the appellant did not become upset until after his rights were read to him. *See also State v. Haller*, 178 W.Va. 642, 363 S.E.2d 719, 721 (1987), in which this Court found that the fact that the defendant had been given the *Miranda* warnings is taken into consideration when determining whether a statement was voluntary.

appellant did not object or give any indication that the confessions were coerced until substantially later. "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 3, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). After reviewing the circumstances behind the confessions, we cannot conclude that the lower court was clearly wrong.

## II.

The appellant's next allegation complains that he was provided ineffective assistance of counsel. The appellant's argument is based primarily upon trial counsel's failure to prevent his client from making further statements, allowing him to go with the police to look for the weapon, and failing to request a suppression hearing. Trial counsel apparently felt the appellant's confessions were voluntary and lawfully obtained.

■ The standard used to measure if trial counsel was ineffective is found in *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). "[C]ourts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case will be regarded as harmless error." *Id.* at syl. pt. 19. In *Thomas,* the Court noted that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *Id.* at syl. pt. 21.

■ It is often impossible, however, for this Court to determine on appeal whether the attorney's performance below was ineffective or merely the result of trial strategy. Thus, in *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988), we held that a habeas corpus action was the proper man-

ner in which to bring such a claim. "Where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus." *Id.* at syl. pt. 11.

Like the situation in *England,* the appellant's claim of ineffective assistance of counsel is not apparent from the record. We hesitate to label as ineffective an attorney's actions when the reasons for those actions are not clear. At one point below, the defense attorney requested that he be removed as the defendant's counsel, noting that the defendant had changed his mind about the strategy in the case. Therefore, we cannot conclude, with any certainty, that trial counsel's actions were ineffective. Since the record is inadequate to resolve the claim of ineffective assistance of counsel, we will not address it so the defendant can "develop an adequate record in habeas corpus." *England,* 180 W.Va. at 345, 376 S.E.2d at 551 syl. pt. 11.

## III.

■ Finally, we find no merit in the appellant's argument that he was not promptly presented to the magistrate for arraignment. Not all delay in transporting a defendant to a magistrate is considered critical under prompt presentment rules. In *State v. Wickline,* 184 W.Va. 12, 399 S.E.2d 42 (1990), this Court found that "the delay between the time of the arrest or custodial interrogation and the giving of a confession is most critical for prompt presentment purposes because during this time period custodial confinement and interrogation can be used to attempt to produce a confession." *Id.* at syl. pt. 4. Moreover, "[t]he delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule." Syl. pt. 4, *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986). Significantly, the Court in *Humphrey* found that an hour and a half delay in presentment after the defen-

294

dant gave a written statement to police did not violate the prompt presentment rule.

In this case, the time between the appellant being turned over to the deputies and the confession was less than an hour. The appellant spent most of that time in processing, and he was taken to the magistrate immediately thereafter. Indeed, the appellant received the *Miranda* warning twice during that hour, and he failed to request a lawyer. The appellant presents no evidence to show the primary purpose of the delay was to obtain a confession. In this case, we found the appellant's confessions to be voluntary, and likewise, we can find no impropriety in the time period before presentment.

Accordingly, for the reasons discussed above, we affirm the judgment of the Circuit Court of Fayette County.

Affirmed.