650 S.E.2d 574

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Christopher FRYE, Defendant Below, Appellant.**

No. 32786.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 2006.

Decided Feb. 17, 2006.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for the Appellee.

1. The items that were the subject of the grand larceny indictment include four factory custom chrome wheels from a 1994 Jeep Grand Cherokee; a Campbell Hausfield water pressure washer; and a 1999 yellow Honda four-wheel all-terrain vehicle. Appellant conceded that the value of these goods exceeded $1,000.

2. A co-defendant, Robert Fields, was similarly charged for these two offenses.

John W. Bennett, Eiland & Bennett, Logan, for the Appellant.

ALBRIGHT, Justice:

Appellant Christopher Frye appeals from the October 15, 2004, order of the Circuit Court of Logan sentencing him to one to ten years following his conviction for grand larceny. As grounds for the appeal, Appellant asserts the ineffective assistance of his counsel both during voir dire and at trial. Upon our review of this matter, we find that the record is not properly developed to permit us to review this issue on its merits. Finding no error, we affirm the ruling below.

### I. Procedural Background

Appellant was charged with grand larceny in connection with an incident that occurred on July 14, 2003.[1] The Grand Jury for Logan County returned an indictment against Appellant on May 10, 2004, through which he was charged with one count of breaking and entering and one count of grand larceny.[2] The breaking and entering charge was dismissed. At the conclusion of a two-day trial held on August 17 and 18, 2004, Appellant was convicted on one count of grand larceny.[3]

Through the trial court's sentencing order entered on October 27, 2004, Appellant was sentenced to an indeterminate sentence of one to ten years in the state penitentiary. It is from this judgment that Appellant seeks relief.

### II. Standard of Review

■ Because the issue of ineffective assistance of counsel has been presented for the first time on appeal rather than the preferred method of seeking relief through a habeas corpus proceeding, there are no rulings from the circuit court to provide a basis for review.[4] Thus, the standard that is to be

3. See W.Va.Code § 61-3-13(a) (1994) (Repl.Vol. 2005) (defining grand larceny as larceny of goods or chattels having a value of $1,000 or more).

4. If we had the benefit of trial rulings, our review for ineffective assistance of counsel would proceed with an examination of the trial court's findings of fact pursuant to a clear error standard and the legal conclusions on a *de novo* basis. See State ex rel. Daniel v. Legursky, 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995).

applied was announced in syllabus point five of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Accordingly, we proceed to determine whether under *Miller*, the performance of Appellant's trial counsel was ineffective.

## III. Discussion

■ In *Miller*, this Court expounded on the focus of an ineffective assistance inquiry:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

194 W.Va. at 6–7, 459 S.E.2d at 117–18, syl. pt. 6. Articulating the difficulties presented in cases where this issue is presented on direct appeal, as is the case here, we stated that "intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Id.* at 14–15, 459 S.E.2d at 125–26.

In this case, Appellant asserts ineffective assistance based on his trial counsel's failure to follow-up with specific inquiries after one of the prospective jurors indicated during voir dire that she "kn[e]w the reputation of him" and "the reputation that follows him." This juror was later struck for cause but Appellant posits that this juror's comments,

combined with his counsel's failure to question the prospective juror, could have negatively impacted the jurors who were ultimately impaneled. As additional grounds for his appeal, Appellant argues that it was error for trial counsel not to ask a single question of any of the State's nine witnesses and also not to move for a directed verdict either at the close of the State's evidence or at the end of trial.

We explained in *Miller* that " 'it is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal.' " 194 W.Va. at 14, 459 S.E.2d at 125 (quoting *State v. Triplett*, 187 W.Va. 760, 771, 421 S.E.2d 511, 522 (1992)). This is due to the undeveloped state of the record:

> The very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls of his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies.

194 W.Va. at 15, 459 S.E.2d at 126.

While Appellant seems to suggest that ineffective assistance can be demonstrated on the face of the existing record given trial counsel's failure to cross examine any of the State's witnesses, the State presents a convincing argument that trial counsel opted not to question these witnesses in furtherance of a specific strategy. In his closing argument to the jury, trial counsel explained:

> The State of West Virginia charged Mr. Frye with grand larceny. The burden of proof is on the State of West Virginia to prove each and every element of grand larceny beyond a reasonable doubt. They presented those nine witnesses and Tom Esposito [defendant's trial counsel] asked not one question. The reason being [was that] Mr. Frye is not charged with breaking or entering, or entering without breaking, or receiving stolen property, or transferring stolen property, or putting stolen

property on a vehicle. He's charged with grand larceny. Grand larceny and grand larceny only. That was the State's case.

The tactic employed by Appellant's trial counsel was to argue that the State had proffered witnesses whose testimony could be offered as evidence that Appellant had committed the separate offenses of receiving stolen property, transferring stolen property, or breaking and entering, but not the offense of grand larceny. With the exception of the co-defendant's testimony, trial counsel stressed that the witnesses testifying on the State's behalf did not offer any testimony that supported the State's theory that Appellant had committed grand larceny. As to the testimony of the co-defendant that he and Appellant had taken the items that were the subject of the indictment, trial counsel provided the jury with at least two reasons to question the veracity of Mr. Fields' testimony. Trial counsel noted that, by his own testimony, Mr. Fields was both inebriated and in a drug-impaired state at the time the crime was allegedly committed. In addition, Appellant's trial counsel emphasized to the jury that Mr. Fields was arguably a biased witness because he had entered into a plea agreement for the offense of grand larceny with the expectation that he might receive probation in exchange for his cooperation with the State.

As the State discusses in its brief, the record is clear that the State had no physical evidence connecting Appellant to the crime scene. The jury was apprised that although the investigating officer had collected some evidence for DNA and fingerprint analysis, this physical evidence was never submitted to the crime lab. Appellant's trial counsel emphasized this lack of evidence in summation. Our review of the record submitted in this case confirms what the State posits: That trial counsel's actions or inactions were calculated towards advancing a particular theory of the case.[5]

 Like many other decisions at trial, the decision to cross-examine witnesses is one of strategy. We explained in syllabus

point twenty-one of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *See Moss v. Hofbauer,* 286 F.3d 851, 864–65 (6th Cir.2002) (holding that strategic decision not to cross-examine witness is " 'virtually unchallengeable' " and recognizing "potential risk of having ... damaging testimony repeated during cross-examination") (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052); *see also Dows v. Wood,* 211 F.3d 480, 487 (9th Cir.2000) (finding that defense counsel's failure to cross examine majority of State's witnesses was not ineffective assistance of counsel and emphasizing that "counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objectively reasonable standards"). In a similar vein, the level of participation employed by trial counsel during voir dire is also subject to the presumption that such decisions were motivated by sound trial strategy. *See Stanford v. Parker,* 266 F.3d 442, 454–55 (6th Cir.2001); *see also State v. Turnsplenty,* 316 Mont. 275, 70 P.3d 1234, 1237 (2003) (finding ineffective assistance of counsel claim improperly raised on direct appeal based on inadequacy of record to address defense counsel's failure to ask follow-up questions during voir dire); *State v. Twyford,* 94 Ohio St.3d 340, 763 N.E.2d 122, 147 (2002) (holding that defense counsel's failure to further question prospective jurors in voir dire was not ineffective assistance of counsel).

When the critical component of a fully developed record is missing, an ineffective assistance claim is all but guaranteed to be denied due to the " 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Mil-*

---

5. We do not pass on whether advancement of the particular theory adopted by trial counsel meets the objectively reasonable standard established by *Miller.* *See* 194 W.Va. at 6–7, 459 S.E.2d at 177–18, syl. pts. 5, 6.

*ler,* 194 W.Va. at 15, 459 S.E.2d at 126 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052)). We explained the parameters of this presumption in *Miller:*

> In other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

194 W.Va. at 16, 459 S.E.2d at 127.

■ Given the applicable standard and the strong presumption that operates in such cases where ineffective assistance of counsel is raised, we conclude, as did the Court in *Miller,* that "we intelligently cannot determine the merits of this ineffective assistance claim without an adequate record giving trial counsel the courtesy of being able to explain his trial actions." *Id.* at 17, 459 S.E.2d at 128. While we are unable to decide this ineffective assistance of counsel claim on its merits, our decision does not foreclose further development of this issue through post-conviction collateral attack should Appellant seek to pursue this issue below.

The procedures which govern an incarcerated individual's right to seek habeas corpus relief are set forth in West Virginia Code § 53–4A–1 (1967) (Repl.Vol.2000). The language in that statute expressly limits applications for post-conviction relief to cases where

> such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, ... or in any other proceeding or proceedings which the petitioner has

instituted to secure relief from such conviction or sentence.

W.Va.Code § 53–4A–1(a). During oral argument of this case, the State was concerned that any ruling by this Court on the issue of ineffective assistance that addressed the merits of the claim would preclude any further consideration of that issue in a habeas corpus proceeding based on the provisions of West Virginia § 53–4A–1. This concern was prompted by the language of West Virginia Code § 53–4A–1 that defines what is meant by "previously and finally adjudicated." W.Va.Code § 53–4A–1(a).

■ By statute, the issue raised in this proceeding—ineffective assistance of counsel—would only be barred from being the subject of habeas corpus relief as having been "previously and finally adjudicated" if at some point in the appellate process "there was a decision on the merits thereof after a full and fair hearing thereon." W.Va.Code § 53–4A–1(b). Accordingly, we hold that an incarcerated individual who raises an issue on direct appeal that was not the subject of a previous petition seeking post-conviction relief under West Virginia Code § 53–4A–1 is not prohibited from seeking habeas corpus relief following the issuance of an opinion by the West Virginia Supreme Court of Appeals where the decision on the appeal does not contain any ruling on the merits of the issue, as no final adjudication within the meaning of West Virginia Code § 53–4A–1 has resulted. Because we are not deciding the issue of ineffective assistance of counsel on its merits due to the lack of an appropriate record for review, relief in the form of habeas corpus is not barred under the provisions of West Virginia Code § 53–4A–1 as the result of Appellant having instituted a direct appeal.

Based on the foregoing, the decision of the Circuit Court of Logan County is affirmed.

Affirmed.