671 S.E.2d 438

STATE of West Virginia, Plaintiff
Below, Appellee

v.

William M. WOODSON, Defendant
Below, Appellant.

No. 33701.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 24, 2008.

Decided Nov. 6, 2008.

W. Jesse Forbes, Charleston, Counsel for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara Allen, Managing Deputy Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, Counsel for the Appellee.

PER CURIAM.[1]

This is an appeal by Appellant William Woodson from his conviction in the Circuit Court of Kanawha County, West Virginia, of first degree robbery and malicious wounding. Appellant raises numerous assignments of error which he alleges occurred at trial and sentencing. Appellant also alleges that he was denied effective assistance of counsel at trial.

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

This Court has carefully considered the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons discussed herein, we find no error below and, accordingly, we affirm Appellant's convictions of first degree robbery and malicious wounding and the sentences imposed.

I. Factual and Procedural Background

In the evening hours of December 5, 2004, Timothy Barkey (hereinafter "victim") rode his bicycle from his apartment on Brooks Street in the East End area of Charleston to a convenience store to purchase cigarettes. The victim rode to the East End Market only to learn that it was closed. He then rode across the street to another convenience store where he purchased a pack of cigarettes. Upon leaving the store, the victim had approximately $6.00 and some change in his pocket.

When he began his ride home, the victim again rode through the East End Market parking lot. The victim testified that he rode through the parking lot on his way to Washington Street and from there he intended to ride to his apartment on Brooks Street. According to the victim, even though there were a number of "street people" who often frequented Washington Street, he felt safer taking that route because it had better lighting and had more cars driving on it compared to the other streets that also led back to his home. It was in the parking lot that the victim was stopped by Edward Brown, who had crossed the street in order to approach him. According to the victim, Brown asked him if he wanted to buy drugs and if he had any money. Brown then stated to the victim, "Well, you're in the 'hood now ... [w]e're going to take your bike." While the victim was still sitting on the bicycle, Brown pulled it towards one end of the parking lot to where Appellant was sitting in his wheelchair. It was at that moment that the victim first became aware of Appellant's presence. According to the victim, Appellant then stood up and, along with Brown, began punching the victim repeatedly.[2] The victim testified that the two men eventually got him to the ground where Appellant, who was wearing heavy work boots, continuously kicked the victim in the face.

The victim testified that, during the course of the attack, he heard a woman call out from a nearby apartment building for Appellant and Brown to "[l]eave him alone." In response, the victim yelled out, "Call 911." According to the victim, both men then proceeded to kick him harder and more frequently. Prior to his trial testimony, the victim had never mentioned the presence of this woman to police or to anyone else, including the prosecuting attorney.

The victim testified that, finally, Brown reached into the victim's pocket and took the small amount of money he had with him. The victim then heard Appellant say, "Well, that's all he's got, let him go." The victim's face was left bloodied by the attack and his eyes were severely swollen. After riding home to clean himself up, the victim eventually went to the emergency room where it was determined he had a fractured nose and other injuries to his eyes and face.

Thereafter, the victim identified Appellant and Brown as his assailants. Corporal James A. Rollins of the City of Charleston Police Department testified that, as Appellant was being taken into custody, he stood up out of his wheelchair to get into the patrol wagon. Corporal Rollins stated that Appellant stood up from the wheelchair without assistance but that he held Appellant's arm to make sure he did not fall backwards. According to Corporal Rollins, Appellant walked up two steps to get into the patrol wagon.[3]

Appellant testified in his own defense. According to Appellant, he was confined to a wheelchair because he had a spinal injury he sustained from a gunshot wound several years earlier. He stated that the right side of his body is stronger than his left and that,

---

2. The victim testified that, several years earlier, he was in an automobile accident and suffered a traumatic brain injury. It is apparent from the record that, as a result, the victim suffers from physical and mental disabilities.

3. Detective Rollins apparently was familiar with Appellant. He testified that he "asked [Appellant] when did he get into the wheelchair, because the last time I saw him he was walking, and he said he had good days and bad days."

although he is able to move his left arm and leg, they are very weak. Appellant further testified that he is an alcoholic and that, on the day of the crime, he had been drinking vodka all during the day. He initially testified that the victim was not attacked "as far as I know." He stated that he was sitting in the parking lot but did not see the victim get beaten up or kicked. Moreover, Appellant declared that he did not have enough muscle in his legs to kick anyone and that there was "no way possible" he stood up from his wheelchair and punched the victim. Similarly, he stated it was not possible that he kicked the victim while sitting in his chair. Finally, Appellant testified that "I don't recall what transpired" because "I was drunk," and that he did not receive any of the money taken from the victim.

On September 26, 2005, upon conclusion of the one-day trial, the jury convicted Appellant of first degree robbery and malicious wounding. By order entered October 31, 2005, Appellant was sentenced to a thirty-five year prison term on the robbery conviction and a two-to-ten-year sentence on the malicious wounding conviction.[4] The trial court ordered these sentences to run consecutively.[5]

Following sentencing, Appellant's trial counsel filed a Notice of Intent to Appeal. However, no appeal was filed. Following the death of his trial counsel, Appellant was appointed new counsel. Counsel filed a Motion for Resentencing for the purpose of restarting the time in which Appellant could appeal his conviction and/or sentence. By order entered February 9, 2007, the motion for resentencing was granted and Appellant was resentenced to the sentences originally imposed. It is from that order that Appellant now appeals.

## II. Discussion

In this appeal, Appellant raises a variety of assignments of error which he argues occurred at trial, including (1) the admission of evidence of "prior bad acts" of Appellant, which violated Rule 404(b) of the West Virginia Rules of Evidence; (2) the admission of evidence showing that Appellant and Brown had a racially biased motive in committing the crimes; (3) the introduction of hearsay statements by Brown, which violated Appellant's Sixth Amendment right to confront witnesses; and (4) the failure of the State to disclose a "potentially exculpatory" eyewitness. Appellant also argues that the evidence elicited at trial was not sufficient to support his convictions and that the sentences imposed by the trial court were excessive and, therefore, unconstitutional. Finally, Appellant contends he received ineffective assistance of counsel at trial. We will address each of these alleged errors in turn.

## A.

In his first assignment of error, Appellant argues that evidence of "prior bad acts or wrongs" were admitted at trial in violation of Rule 404(b) of the West Virginia Rules of Evidence, "other crimes, wrongs or acts," which provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This Court has explained that,

> When offering evidence under Rule 404(b) ... the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury

---

**4.** During the sentencing hearing conducted on October 24, 2005, Appellant admitted to physically assaulting the victim. However, he repeated his contention that he did not receive any of the money taken from the victim during the assault.

**5.** According to Appellant, Brown pled guilty to second degree robbery. He was sentenced to five to eighteen years in prison.

must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

Syl. Pt. 1, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). *See* Syl. Pt. 3, *State v. Scott*, 206 W.Va. 158, 522 S.E.2d 626 (1999). The specific "bad acts or wrongs" which Appellant alleges in this appeal are (1) testimony by the victim that Appellant was "kicked out" of the victim's apartment building shortly after the victim moved in [6]; (2) testimony that Appellant used to "bum change" from the victim, thus portraying Appellant "as a nearly homeless man of the streets;" (3) evidence that the area of town where the crimes occurred was dangerous and prone to criminal activity, which, according to Appellant, "attempt[ed] to attribute society's ills as a whole against this one criminal defendant;" and (4) evidence that Brown asked the victim if he wanted to purchase drugs, which suggested "Appellant was associated with a drug dealer."

■ Evidence of the alleged "prior bad acts" which Appellant now assigns as error were not objected to during the course of his trial. Ordinarily, this Court follows the general principle that it " 'will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' " Syl. Pt. 7, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995). *See* Syl. Pt. 3, *State v. Craft*, 200 W.Va. 496, 490 S.E.2d 315 (1997). However, in its discretion, this Court may review the issues under the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

As further explanation of this doctrine, we have held that

"[a]n unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings."

Syl. Pt. 2, *Scott*, 206 W.Va. 158, 522 S.E.2d at 626 (1999)(*quoting* Syl. Pt. 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).) *See* Syl. Pt. 2, *State v. Thompson*, 220 W.Va. 398, 647 S.E.2d 834 (2007) (declaring that plain error doctrine should be used "sparingly"). As discussed in more detail below, we find that none of the evidence Appellant describes constituted plain error.

First, we address whether it was plain error for the trial court to admit the victim's testimony that Appellant had been "kicked out" of his apartment building. In analyzing plain error, we must first determine whether this testimony, standing alone, constitutes error if admitted into evidence. *Miller*, 194 W.Va. at 7, 459 S.E.2d at 118, syl. pt. 7. Appellant argues the evidence of a prior wrong or bad act is improperly admitted to prove character "to show that he . . . acted in conformity therewith," in violation of Rule 404(b) of the West Virginia Rules of Evidence. Moreover, Appellant contends the State failed to identify the specific purpose for which the evidence was being offered and the jury was not given a corresponding limiting instruction. *McGinnis*, 193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 1.

■ The victim's testimony was an answer to a question regarding whether he knew Appellant's name before the attack. The victim replied that Appellant once lived in his apartment building, but was "kicked out" shortly after the victim moved in. The vic-

---

6. The victim testified that he did not have personal knowledge of this fact, but was told by the building's manager. Thus, Appellant argues the victim's testimony was also inadmissible hearsay.

tim does not explain the circumstances under which Appellant was "kicked out," nor was he asked to provide any further details about it. Indeed, the victim's testimony does not provide, nor is it otherwise apparent from the record, whether Appellant was "kicked out" for a benign reason or an illicit one. However, assuming, *arguendo*, that admission of this testimony violated Rule 404(b) and the requirements of *McGinnis*, we shall determine if the error was "plain," "affect[ing] substantial rights" and "seriously affect[ing] the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W.Va. at 7, 459 S.E.2d at 118, syl. pt. 7. We find that the error of admitting the victim's testimony, if indeed it was error, does not rise to nearly such a level. Because we cannot conclude this testimony resulted in a miscarriage of justice or skewed the fundamental fairness or basic integrity of Appellant's trial in any major way, we find the plain error doctrine does not apply. *See Scott*, 206 W.Va. at 159–60, 522 S.E.2d at 627–28, syl. pt. 2.

■ A second "prior bad act" Appellant argues was wrongly admitted was testimony that Appellant used to "bum change" from the victim, which Appellant contends portrayed him "as a nearly homeless man of the streets." A review of the trial transcript reveals that, in response to a question by defense counsel as to whether he had ever spoken to Appellant before the attack, the victim testified, "Right, unless he, you know, tried to bum change off of me, but I don't even remember him doing that." It is clear that the victim testified that, in fact, Appellant did *not* try to "bum change" from him. Furthermore, Appellant himself testified that he had been homeless for approximately eight months. Because Appellant does not explain how being portrayed as "homeless" constitutes a "bad act or wrong" for purposes of Rule 404(b) and because Appellant himself testified to the fact he had been homeless for a certain period in his life, we find no error in the admission of the victim's testimony in this regard. Thus, further analysis under the plain error doctrine is not warranted.

■ Next, we address whether it was plain error for the trial court to admit testi-

mony which described the area where the crime occurred as a dangerous part of town prone to criminal activity, thereby "attempting to attribute society's ills as a whole against" this appellant. We find this argument to be creative, but wholly without merit. The victim testified he felt safer riding his bicycle on certain streets in the area because they had better lighting and more street traffic than others, even though these busier streets were frequented by so-called "street people." Importantly, the victim never characterized Appellant as one of the "street people." Furthermore, the purpose of the victim's description of the area was to explain why he chose a certain route home that night and how he came to ride through the East End Market parking lot (where he was attacked) on his way home from buying cigarettes. Appellant's testimony in this regard explained and put into context the attack that next transpired. Thus, we are not persuaded that the victim's testimony "essentially put the Appellant on trial for all criminal activity in the area" where the crime occurred, as argued by Appellant. Because we find no error in admission of this testimony, the plain error doctrine does not apply.

■ Finally, we address whether admission of the victim's testimony that Brown asked him if he wanted to buy drugs was plain error because it associated Appellant with a "drug dealer." A review of the trial transcript reveals this testimony to be an integral part of the description of events that transpired just before the victim was attacked by Brown and Appellant. The victim described how he was riding his bicycle home when Brown crossed the street for the purpose of speaking with him, and then, along with Appellant, beating and robbing him. When Brown first approached the victim, he claimed to be willing to sell him drugs, but when the victim declined, he quickly asked for money. It was then that Brown pulled the victim and his bicycle toward Appellant so that the two men could viciously beat and punch him in order to take what little money he had. We find that the victim's testimony that Brown offered to sell him drugs was relevant because it was inextricably intertwined with the crimes that occurred imme-

diately thereafter. Thus, we conclude the trial court did not commit error, plain or otherwise, in admitting this testimony.

### B.

In his second assignment of error, Appellant argues that evidence that Appellant and Brown, both of whom are African American, had a racially-biased motive in committing the crimes against the victim, who is Caucasian, was improperly admitted at trial. Specifically, Appellant contends that the victim's testimony that Brown's remark, "you're in the 'hood now ... [w]e're going to take your bike," "clearly references the issue of race" because it described "what type of neighborhood [the victim] was in ....[A] logical ... conclusion to the meaning of the statement is that the victim was claiming that Mr. Brown indicated that he, a white man, was in the 'hood' and that 'We,' or African–Americans in general, were going to take your bike for being in the wrong neighborhood." According to Appellant, under syllabus point 9 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995),

> Appellate courts give strict scrutiny to cases involving the alleged wrongful injection of race, gender, or religion in criminal cases. Where these issues are wrongfully injected, reversal is usually the result. Where race, gender, or religion is a relevant factor in the case, its admission is not prohibited unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

We note that, in the instant case, no objection was made to the victim's testimony during trial. Therefore, this Court will determine if the plain error doctrine applies. *Miller*, 194 W.Va. at 7, 459 S.E.2d at 118, syl. pt. 7; *Scott*, 206 W.Va. at 159–60, 522 S.E.2d at 627–28, syl. pt. 2.

We have carefully reviewed the victim's testimony in the context of the entire proceeding below. It is clear that his testimony that Brown told him he was "in the 'hood now ... [w]e're going to take your bike" did not inject the issue of race. When Brown first approached the victim to offer to sell him drugs and then ask for money, Brown was alone. Brown then announced to

the victim that he was "in the 'hood now" and "*we're* going to take your bike." It was at that moment that Brown deliberately pulled the victim and his bike to where Appellant was waiting so that the two men could commence their violent attack. During direct examination of the victim by the State, it was apparent that "we" referred to Brown and Appellant:

Q: Now I want you to think about it, and be very specific. Did he—did Mr. Brown say, I'm going to take your bike? Or did he say, We are going to take your bike?

A: He said, You're in the 'hood. We are going to take your bike now.

Q: And after he told you that, and he had pulled your bike toward the river side of the East End Mart parking lot, what did you see?

A: Then I seen the Defendant in his wheelchair. He was either sitting there by the phone, or had just rolled up by the phone.

Q: And this is right after the comment that Brown made about, We are going to take your bike?

A: Yeah.

Crucially, Appellant points to no additional testimony or other evidence elicited below which supports his claim that the issue of race played any part at all in the proceedings. Indeed, our review of the trial transcript and the entire record in this case does not reveal any statement or suggestion that either the state or the Appellant injected a racially-biased motive into this case. Therefore, we find Appellant's contention that the issue of racial bias was improperly introduced at trial to be without merit. Accordingly, because there was no error, the plain error doctrine does not apply.

### C.

Next, Appellant argues the trial court violated his Sixth Amendment right to confront witnesses against him by allowing the victim to testify about a statement made by Brown just before he and Appellant beat and robbed the victim in the parking lot. Specifically, Appellant contends that the statement, "we

are going to take your bike" was inadmissible hearsay and violated his Sixth Amendment right to confront a witness against him.[7]

Again, no objection to this testimony was made at trial. Thus, this Court will determine if the plain error doctrine applies.

 Hearsay is defined in Rule 801(c) of the West Virginia Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In syllabus point one of *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990), this Court held

> Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

*See* Syl. Pt. 6, *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004); syl. pt. 2, *State v. Pettrey*, 209 W.Va. 449, 549 S.E.2d 323 (2001), *cert. denied*, 534 U.S. 1142, 122 S.Ct. 1096, 151 L.Ed.2d 994 (2002); syl. pt. 2, *State v. Dillon*, 191 W.Va. 648, 447 S.E.2d 583 (1994).

 The victim's testimony did not constitute hearsay. The victim testified to Brown's statement that "[w]e're going to take your bike" *not* to show that Brown and Appellant were going to steal his bicycle— that is, not to prove the truth of the matter asserted. Rather, the purpose of the victim's testimony was to recount or explain the sequence of events leading up to the two men's beating and robbing the victim of his money. Brown's statement to the victim that "[w]e're going to take your bike" was an integral part of that sequence. Because the victim did not testify to the statement to prove the truth of the matter asserted, the statement was not hearsay. As we explained in *Pettrey*, 209 W.Va. at 456, 549 S.E.2d at 330, "[s]tatements which are not offered for the truth of

the matter asserted do not implicate the Sixth Amendment right to confrontation." *See Dillon*, 191 W.Va. at 658, 447 S.E.2d at 593 (statements admitted for limited purpose of placing statements in context and making them comprehensible to the jury are not offered to prove the truth of the matter asserted and do not implicate the Sixth Amendment right to confront witnesses). Thus, because the victim's testimony was not hearsay, it did not violate Appellant's Sixth Amendment rights. Accordingly, given there was no error, the plain error doctrine does not apply.

### D.

Appellant's next assignment of error is that the State failed to disclose a "potentially exculpatory" witness—namely, the woman, according to the victim, who, during the attack, yelled out to Appellant and Brown from a nearby apartment building to "[l]eave him [Appellant] alone." Appellant argues that failure to disclose this witness prior to trial violated his due process rights under Article III, Section 14 of the West Virginia Constitution, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982). Because Appellant did not object to this testimony below, we review it under the plain error doctrine.

 The victim's testimony on direct examination that a woman yelled out during the attack had never been mentioned prior to his trial testimony. The woman is not mentioned again during the course of trial. Neither counsel for the State nor defense counsel proceeded to ask the victim any questions about her. No details about her or her identity were given or inquired about. The State correctly points out that she does not appear in the report prepared by the investigating officer or in the victim's statement to police. In short, there is no evidence that the State knew of this woman's existence until the victim's testimony at trial.

 In syllabus point two of *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007), this Court held that

---

7. Brown did not testify.

[t]here are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

The first component to be addressed under syllabus point two of *Youngblood* is whether the evidence at issue was favorable to Appellant as exculpatory evidence. As set forth above, there is no evidence that either the prosecutor or the police knew of the existence of the alleged eyewitness until the victim spoke of her during direct examination at trial. As a result, it is impossible to determine the nature of this evidence. This woman was never identified and never gave a statement to police regarding what she observed. Appellant's characterization of her testimony as "exculpatory" or potentially so, is purely guesswork. This Court has stated that "any attempt to determine the level of exculpatory or impeachment value [if any] of the evidence would be mere speculation. It is impossible for this Court to ascertain whether the evidence would have been of an exculpatory or impeachment nature." *State v. Hawk*, 222 W.Va. 248, 251, 664 S.E.2d 133, 136 (2008). Because the evidence does not satisfy the first component of the *Brady/Youngblood* analysis, Appellant's argument fails and the plain error doctrine does not apply.

### E.

■■■■ Appellant also argues that the evidence elicited at trial was not sufficient to support his convictions of first degree robbery and malicious wounding. In syllabus point three, in part, of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court held:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*See State v. Rogers*, 209 W.Va. 348, 547 S.E.2d 910 (2001).

■■■ In support of his argument that there was insufficient evidence to convict him of first degree robbery, Appellant contends there is no evidence that he took or attempted to take any money or anything of value from the victim. According to Appellant, the only evidence adduced at trial was that Brown reached into the victim's pocket and took the little money he had. Appellant maintains there was no evidence that he received any of the money. We find Appellant's argument does not accurately represent the evidence presented and, further, that his contention that the evidence does not support the convictions is without merit.

First degree robbery was defined for the jury as "when any person commits or attempts to commit robbery by either (1) committing violence to another person, including, but not limited to, partial strangulation or suffocation, or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon." *See* W.Va.Code § 61–2–12 (2000) (Repl. Vol. 2005). The trial court further instructed the jury "that two or more people may be charged with the commission of robbery, as principals in the first degree, when one of the two persons was present, aiding and abetting the other in the commission of the robbery; and that principals in the second degree are treated as principals in the first degree."[8]

8. *See* W.Va.Code § 61–11–6 (1923) (Repl. Vol. 2005), in part. ("In the case of every felony,

Viewing the evidence in the light most favorable to the prosecution, we find the evidence clearly demonstrates Appellant actively participated in the robbery of the victim. According to the victim, Appellant waited at one end of the parking lot as Brown pulled the victim and his bicycle towards Appellant. Appellant then stood up from his wheelchair and, along with Brown, proceeded to punch the victim. When the victim was eventually brought to the ground, Appellant viciously kicked him while wearing heavy work boots. The two men only ceased their attack when Brown finally reached into the victim's pocket and stole his money. The fact that Brown and not Appellant retrieved the money is of no consequence, nor is the fact that Appellant allegedly received none of the stolen money. After the two men beat the victim to the point of fracturing his nose and causing injury to his face, it was Appellant who stated, "Well, that's all he's got, let him go." Appellant clearly intended to take and receive the victim's money after brutally beating him up to get it. We conclude, therefore, that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime of first degree robbery proven beyond a reasonable doubt.

 Appellant was also convicted of the crime of malicious wounding. Malicious wounding is defined as "when any person maliciously shoots, cuts, stabs, or wounds any person, or by any means causes him bodily injury with the intent to maim, disfigure, disable or kill." *See* W.Va.Code § 61–2–9 (2004) (Repl. Vol. 2005). The jury was also instructed that "malice is defined as an action flowing from anger, hatred, revenge, or any other wicked or corrupt motive; an act done with wrongful intent, under circumstances that indicate a heart and mind heedless of all social duty and fatally bent on mischief."

Appellant's contention that there was insufficient evidence to convict him of this offense is completely without merit. From the moment Brown pulled the unsuspecting vic-

tim on his bicycle to where Appellant was waiting in the parking lot, Appellant and Brown repeatedly punched and then viciously and repeatedly kicked the victim in order to disable or incapacitate him so one of them could reach into his pocket to take his money. In past cases, this Court has indicated that the term "malice" can include "not only anger, hatred and revenge, but other unjustifiable motives.... It may be inferred from any deliberate and cruel act done by the defendant without any reasonable provocation or excuse, however sudden." *State v. Bongalis*, 180 W.Va. 584, 588, 378 S.E.2d 449, 453 (1989). It is clear from the evidence that the victim in no way provoked the attack which left him with a fractured nose and caused his eyes to be swollen almost shut. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the elements of the crime of malicious wounding proven beyond a reasonable doubt.

### F.

Next, we address Appellant's argument that the sentences imposed are disproportionate to both the crime and the sentence imposed upon Brown, the other aggressor, and constitute cruel and unusual punishment, in violation of Article III, Section 5 of the West Virginia Constitution. The trial court sentenced Appellant to a thirty-five year prison term for the first degree robbery conviction and a term of two-to-ten years for the malicious wounding conviction. The terms were ordered to run consecutively. Appellant argues that, compared to the sentence imposed upon Brown,[9] who Appellant characterizes as the "principal aggressor," Appellant's sentence is excessive. Appellant further notes that he is forty-nine years old, confined to a wheelchair, and in poor health. The sentences imposed effectively incarcerate him for life.

 It is well settled in this jurisdiction that " ' "[s]entences imposed by the trial court, if within statutory limits and if not

every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree.")

9. As previously indicated, Brown pled guilty to second degree robbery. He was sentenced to a term of five-to-eighteen years for that offense, as provided for in W.Va.Code § 61–2–12(b).

based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982).' Syl. Pt. 2, *State v. Farmer,* 193 W.Va. 84, 454 S.E.2d 378 (1994)." Syl. Pt. 4, *State v. Murrell,* 201 W.Va. 648 499 S.E.2d 870 (1997). At sentencing, the trial judge explained the sentences imposed:

> I feel that this is a very serious offense. I find that any time someone preys on someone weaker, or somebody that they have a head injury, as Mr. Barkey does, that it is very serious. And the Prosecuting Attorney is correct, it makes no difference whether [Appellant] received any of the Six Dollars, or not, from a legal standpoint. So, I don't think that that is—that is not much of a defense in this case.

> The testimony was that he repeatedly kicked Mr. Barkey once he was down, and I'm totally—I find this to be one of the most significant and serious cases that I've heard as a judge.

> I believe that [Appellant] is a threat to society, and that he requires an appropriate sentence.

The trial judge's primary consideration in determining the sentences was the fact that Appellant and Brown preyed upon a victim who previously suffered a traumatic brain injury, had resulting physical and mental disabilities, and was obviously weaker than his aggressors. Appellant and Brown repeatedly punched and then brutally kicked the victim until they broke his nose and caused his eyes to be swollen almost shut. The victim in no way provoked the attack. Moreover, it was revealed during the sentencing hearing that Appellant has a lengthy criminal record of "some assaults," including a conviction of first degree sexual assault when he was twenty years old. Furthermore, defense counsel made reference to the pre-sentence investigation report, in which Appellant admitted to "join[ing] in" on the physical assault of the victim.

We find no error in the sentences imposed upon Appellant. The sentences are within the limitations set forth by statute and there is no indication in the record that the trial court considered any impermissible factors in imposing the sentences. Accordingly, we affirm the sentences imposed by the trial court.

### G.

The final assignment of error raised by Appellant is that he was denied effective assistance of counsel at trial. In support of this claim, Appellant raises the arguments discussed previously in this opinion. Additionally, Appellant contends that trial counsel failed to adequately investigate whether he was physically capable of carrying out the attack, considering he was partially confined to a wheelchair. Appellant argues he should have been examined by a medical expert. He further maintains that he has a history of alcohol and drug abuse and that he should have been examined by an appropriate expert to determine if he was capable of forming the requisite intent to commit the crimes of which he was convicted.

Moreover, Appellant argues trial counsel failed to adequately investigate whether the victim, who had a traumatic brain injury, was capable of accurately recollecting the events relating to the crime. Trial counsel did not engage an investigator or other appropriate professional to interview the victim for this purpose. Likewise, Appellant states, an adequate investigation would have revealed the woman from the nearby apartment building as a crucial eyewitness to the crime. Appellant further contends that trial counsel failed to strike two harmful jurors—one of whom admitted during voir dire that she was a former classmate of the investigating officer and another who stated she had been a victim of domestic violence. Appellant asserts he requested that trial counsel strike these jurors but counsel did not comply with his request. As additional support to his ineffective assistance claim, Appellant avers that he was not adequately prepared to testify and was not properly advised of his Fifth Amendment rights. Finally, Appellant contends trial counsel introduced a prior statement the victim gave to police which was particularly damaging to Appellant's defense.

The standard for determining whether an ineffective assistance claim is meritorious has been set forth by this Court as follows:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). *See* Syl. Pt. 1, *State v. Frye*, 221 W.Va. 154, 650 S.E.2d 574 (2006); and Syl. Pt. 1, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995). Moreover,

[i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Miller*, 194 W.Va. at 6–7, 459 S.E.2d at 117–18, syl. pt. 6. *See Frye*, 221 W.Va. at 155, 650 S.E.2d at 575, syl. pt. 2.

■ In a direct appeal, however, it is often difficult, if not impossible, for this Court to determine "whether the attorney's performance below was ineffective or merely the result of trial strategy." *State v. Bess*, 185 W.Va. 290, 293, 406 S.E.2d 721, 724 (1991). In past cases, this Court has cautioned that "[i]neffective assistance claims raised on direct appeal are presumptively subject to dismissal." *State v. Miller*, 197 W.Va. 588, 611, 476 S.E.2d 535, 558 (1996). *See City of Philippi v. Weaver*, 208 W.Va.

346, 351, 540 S.E.2d 563, 568 (2000). Such claims are more properly raised in a post-conviction collateral proceeding "to promote development of a factual record sufficient for effective review." *Miller*, 197 W.Va. at 611, 476 S.E.2d at 558. We have explained that

"[i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim."

Syl. Pt. 10, *State v. Hutchinson*, 215 W.Va. 313, 599 S.E.2d 736 (2004) (*quoting* Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992)). Therefore, we decline to reach the merits of Appellant's ineffective assistance claim because the record on appeal is inadequate for such a review. *See State v. Bess*, 185 W.Va. at 293, 406 S.E.2d at 724. If he so chooses, Appellant may reassert the ineffective assistance claim in a petition for writ of habeas corpus so that a full development of the record may be made before the trial court. *See Miller*, 197 W.Va. at 611, 476 S.E.2d at 558; *Bess*, 185 W.Va. at 293, 406 S.E.2d at 724.[10]

### III. Conclusion

Based upon the foregoing, we affirm Appellant's convictions and sentences.

Affirmed.

---

**10.** Though trial counsel in this case is deceased, not all of the issues raised in Appellant's ineffective assistance claim depend entirely on trial counsel's explanation of " 'the motive and reason behind his ... trial behavior.' " *State ex rel. Watson v. Hill*, 200 W.Va. 201, 204, 488 S.E.2d 476, 479 (1997) (*quoting Miller*, 194 W.Va. at 14–15, 459 S.E.2d at 125–26). By way of example, it is not required that trial counsel be interviewed regarding whether he should have engaged appropriate experts to determine whether Appellant had the physical and mental capabilities to commit the crimes or whether the victim, given his traumatic head injury, had the mental ability to accurately recount the attack and Appellant's role in it.