STATE OF WEST VIRGINIA

*v.*

FREDDIE JOE CHURCH

(No. 14774)

Decided December 10, 1981.

*Thomas L. Butcher* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, and *S. Clark Woodroe*, Assistant Attorney General, for defendant in error.

McHUGH, JUSTICE:

The appellant, Freddie Joe Church, was convicted of the crime of murder in the first degree of Robert Lee Stickler. The case is before this Court on an appeal from a final order of the Circuit Court of Wyoming County, entered on August 9, 1979, sentencing the defendant to life without mercy in the West Virginia State Penitentiary at Moundsville, and denying the defendant's motion to set aside the verdict and award him a new trial. On this appeal the defendant assigns and argues four errors relating to his mental competency, gruesome photographs, evidence re-

lating to other crimes and ineffective assistance of counsel.[1]

# I

# THE CRIME

The facts relating to the crime in this case are relatively undisputed. On January 30, 1979, the defendant and his wife, Nancy Church, were occupying a room at the Mountain Motel in Pineville. On that evening five young men, including Robert Lee Stickler, were eating in the motel restaurant. The defendant entered the restaurant and, displaying a .22 caliber pistol, ordered the diners to lie on the floor. The defendant's wife soon joined him in the restaurant.

The defendant ordered his hostages to tie themselves together and they complied. He released one hostage, Wayne Beam, to carry an ultimatum to the authorities. The seige was to last for nine hours through the night of January 30, 1979, and the early morning of January 31, 1979. During that time the defendant repeatedly fired his .22 caliber pistol into the walls and fixtures of the restaurant. One of the hostages testified that whenever they moved the defendant would shoot at the floor near their heads.

At one point in the night the lights in the restaurant went out. The defendant fired his weapon and one of the hostages was struck by the bullet. When the lights came back on, Robert Lee Stickler was bleeding from a wound in his back. The defendant refused to let him receive medical treatment for his wound.

---

[1] The defendant, in his petition for appeal, also assigned the trial judge's refusal to grant his motion for a change of venue as error. That assignment, however, was neither briefed nor argued and, therefore, will be considered abandoned. *See* Syl. pt. 6, *Addair v. Bryant*, 284 S.E.2d 374 (1981): *"Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." The defendant's trial counsel withdrew from the case after the trial and new counsel was appointed to prosecute this appeal.*

The nightlong seige came to a end early on the morning of January 31, 1979, when the hostages jumped the defendant and his wife and disarmed them. Robert Lee Stickler was dead on arrival at the Wyoming County General Hospital. He had bled to death on the floor of the Mountain Motel Restaurant.

## II

### MENTAL COMPETENCY

On February 7, 1979, the trial judge, upon his own motion, entered an order sending the defendant to the Weston State Hospital for observation and examination. The psychiatric observation of the defendant was extended by an order entered on February 29, 1979. The defendant was examined at the Weston State Hospital by a psychiatrist and a psychologist. Their reports were filed with the trial court on March 23, 1979. Both the psychiatrist and psychologist were of the opinion that the defendant was criminally responsible and competent to stand trial.

The defendant's trial began on August 6, 1979. Before impanelling a jury, the trial judge heard argument on whether the defendant was competent to stand trial. At the close of the argument the trial judge found the defendant to be competent to stand trial. The defendant argues that the procedure used in his case did not comply with the controlling statute and was error.[2]

---

[2] *W.Va. Code*, 27-6A-1 [1977], provides, in pertinent part:

(a) Whenever a court of record believes that a defendant in a felony case . . . in which an indictment has been returned may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist.

(b) After the examination described in subsection (a) of this section, the court of record may order that the person be admitted to a mental health facility designated by the director of health for a period not to exceed twenty days for observation and further examination if the court has reason to believe that such

The defendant acknowledges that in his case the proper procedure was followed to the time the reports of the psychiatrist and psychologist were filed with the court. The trial court, however, did not make a finding as to the competency of the defendant to stand trial within five days after the receipt of those reports. The trial judge did not make a finding of competency until the first day of the defendant's trial—August 6, 1979. A trial judge's failure to make a finding on the issue of a criminal defendant's competency to stand trial within five days after the filing of a report by one or more psychiatrists or a psychiatrist

further observation and examination are necessary in order to determine whether mental illness, mental retardation or addiction have so affected a person that he is not competent to stand trial or not criminally responsible for the crime or crimes with which he has been charged. If, before the expiration of such twenty-day period, the examining physician believes that observation for more than twenty days is necessary, he shall make a written request to the court of record for an extension of the twenty-day period specifying the reason or reasons for which such further observation is necessary. Upon the receipt of such request, the court of record may by order extend said observation period, but in no event shall the period exceed forty days from the date of the initial court order of observation.

(c) At the conclusion of each examination or observation period provided for herein, the examining psychiatrists, or psychiatrist and psychologist, shall forthwith give to the court of record a written signed report of their findings on the issue of competence to stand trial or criminal responsibility. Such report shall contain an opinion, supported by clinical findings, as to whether the defendant is in need of care and treatment.

(d) Within five days after the receipt of the report on the issue of competency to stand trial, or if no observation pursuant to subsection (b) of this section has been ordered, within five days after the report on said issue following an examination under subsection (a) of this section, the court of record shall make a finding on the issue of whether the defendant is competent for trial. A finding of incompetence for trial shall require proof by a preponderance of the evidence. Notice of such findings shall be sent to the prosecuting attorney, the defendant and his counsel. If the court of record orders or if the defendant or his counsel on his behalf within a reasonable time requests a hearing on such findings, a hearing in accordance with section two of this article shall be held by the court of record within ten days of the date such finding or such request has been made."

and a psychologist in compliance with *W.Va. Code*, 27-6A-1(d) [1977], however, will not be considered to be reversible error requiring a new trial absent prejudice to the defendant resulting from such failure.

The defendant in this case argues that prejudice did result from the trial judge's failure to make a prompt finding on the issue of his competency to stand trial. Specifically, he argues that he was denied his right to a hearing on his competency pursuant to *W.Va. Code*, 27-6A-2 [1979], by the trial judge's lack of action.[3]

The defendant's argument is based on the premise that a preliminary finding of competency under *W.Va. Code*, 27-6A-1(d) [1977], is a necessary prerequisite to a request for a competency hearing. That premise is incorrect; such a finding is not a prerequisite to a request for a competency hearing. *See State ex rel. Walton v. Casey*, 163 W. Va. 208, 258 S.E.2d 114 (1979); *State v. Milam*, 159 W. Va. 691, 226 S.E.2d 433 (1976). Even though a court does not make a finding on the issue of a criminal defendant's competency to stand trial within five days of the receipt of a report by one or more psychiatrists or a psychiatrist and a psychologist, the defendant may request a hearing on that issue under *W.Va. Code*, 27-6A-1(d) [1977], at any reason-

[3] *W.Va. Code*, 27-6A-2 [1979], provides, in pertinent part:

(a) At a hearing to determine a defendant's competency to stand trial, the defendant shall be present and he shall have the right to be represented by counsel and introduce evidence and cross-examine witnesses. The defendant shall be afforded timely and adequate notice of the issues of the hearing and shall have access to a summary of the medical evidence to be presented by the State. The defendant shall have the right to an examination by an independent expert of his choice and testimony from such expert as a medical witness on his behalf. All rights generally afforded a defendant in criminal proceedings shall be afforded to a defendant in such competency proceedings.

(b) At the termination of such hearing the court of record shall make a finding of fact upon a preponderance of the evidence as to the individual's competency to stand trial based on whether or not the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial. If the individual is found competent, the court of record shall forthwith proceed with the criminal proceedings. . . .

able time prior to trial. The defendant in this case had notice of the findings and opinions of the psychiatrist and psychologist who had examined him. He did not request a competency hearing at any time prior to trial. He was not, therefore, prejudiced by the trial judge's failure to make a finding of competency in compliance with *W.Va. Code*, 27-6A-1(d) [1977]. This is especially significant in light of the trial judge's finding, on August 6, 1979, that the defendant was competent to stand trial. That finding is adequately supported by the record.

## III

## THE "GRUESOME" PHOTOGRAPH

At the defendant's trial the State offered into evidence a photograph of the victim taken during the autopsy. The defendant argues that the introduction of this photograph was error although he does admit that, even had the photograph not been introduced, he would still have been convicted. He argues that the introduction of the photograph may have improperly influenced the jury thereby leading them to withhold a recommendation of mercy.

Photographs of the victim of a crime are not, *per se*, inadmissible. Indeed, even gruesome photographs may be admissible where they are of essential evidentiary value to the State's case. *State v. Rowe*, 163 W. Va. 593, 259 S.E.2d 26 (1979). We have examined the photograph introduced in this case. It is a black and white Polaroid photograph depicting the back of the victim. It shows the entry point of the bullet which caused Robert Lee Stickler to bleed to death. The photograph is not gruesome. It was not, therefore, error to admit it into evidence.

## IV

## EVIDENCE OF OTHER CRIMES

At trial both the defendant and his wife testified. On cross-examination of the defendant's wife the prosecutor asked her if she knew that her husband had once attacked someone with a knife. On cross-examination of the defendant the State again asked about the knife incident and

also asked whether he had been arrested for theft on a prior occasion. The defendant assigns that questioning as error. The State argues that the cross-examination of the defendant and his wife was proper because the defendant had put his character in issue. While we find support for this argument in the record, we do not feel that it is necessary to consider it in detail as the cross-examination, if it was error, was harmless.

We set forth the standard for harmless error in the second syllabus point of *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980):

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Harmless error, in the context of other crime evidence, was recently discussed in *State v. Haverty*, ____ W. Va. ____, 267 S.E.2d 727 (1980). We find the case presently before us to be very similar to the situation in *State v. Haverty*. "There was no repetition of the question ... so as to unduly emphasize the matter with the jury. The State made no reference to this point in its closing argument. The question did not relate to any critical testimony of the defendant. Moreover, we find no other error which might give cumulative effect to this error. Finally, the quality of the State's case rested on direct, rather than circumstantial, evidence." *State v. Haverty, supra*, 267 S.E.2d at 735. The cross-examination of the defendant and his wife in this case did not have a prejudicial effect on the jury.

## V

## EFFECTIVE ASSISTANCE OF COUNSEL

The defendant argues that he did not receive effective assistance of counsel at his trial. In support of this argument he mainly relies on the fact that his trial attorney did not request the court to order a neurological examination. The defendant in this case was examined by both a psychologist and a psychiatrist. The psychologist, Robert B. Bell, examined the defendant first. In his report he stated: "The undersigned found no evidence in this evaluation that would suggest the presence of any organic brain damage. However, a neurologist may be able to offer an opinion about this matter as well." The defendant argues that this statement in the report should have alerted his counsel to the "critical importance" of a neurological examination. The argument, however, does not consider other relevant facts appearing in the record.

The defendant was examined by a psychiatrist after he was examined by Dr. Bell. The psychiatrist, Dr. Moses Wang, had Dr. Bell's report at the time he examined the defendant. Dr. Wang testified that he had performed an electroencephalograph as part of his examination of the defendant. He said that such an examination will show any organic brain damage. The defendant's electroencephalograph, however, was normal and it was the doctor's opinion that the defendant did not suffer from any organic brain damage.

In light of these facts it is clear that the defense counsel's decision not to request further neurological examination of the defendant did not constitute ineffective assistance of counsel.

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal

and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

Syl. pt. 19, *State v. Thomas,* 157 W. Va. 640, 203 S.E.2d 445 (1974). A defendant in a criminal case is not constitutionally guaranteed such assistance of counsel as will necessarily result in his acquittal. He is constitutionally guaranteed counsel with the normal and customary degree of skill. *State v. Thomas, supra; State ex rel. Owens v. King,* 149 W. Va. 637, 142 S.E.2d 880 (1965). We have examined the entire record and the defendant's trial counsel rendered effective assistance to the defendant.

For the foregoing reasons, the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*