# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert J. M.,**
**Plaintiff Below, Petitioner**

**FILED**

**June 17, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-1315** (Upshur County 12-C-87)

**David Ballard, Warden,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert J. M., by counsel William J. O'Brien, appeals the order of the Circuit Court of Upshur County, entered December 1, 2014, that denied his petition for post-conviction habeas corpus relief. Respondent Warden David Ballard, by counsel Benjamin F. Yancey, III, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2007, petitioner, a school teacher, resided with his wife; his wife's daughter, K.D.; and petitioner and his wife's son. On or about August 3, 2007, petitioner, who was then about thirty-seven-years old, confessed to his wife that he had been molesting then fourteen-year-old K.D. for the past twelve months. Petitioner's wife reported petitioner's confession. An investigation ensued and the police took statements from petitioner's wife and K.D. At the same time, petitioner developed suicidal ideations and was twice hospitalized for psychiatric treatment. While hospitalized, petitioner repeatedly admitted to his molestation of K.D. Also in August of 2001, petitioner contacted the police by telephone and attempted to confess his crimes. The responding officer, Deputy Sheriff Mark Davis ("Deputy Davis"), indicated that he would prefer to speak with petitioner in person and in the presence of counsel.

On August 17, 2007, an arrest warrant and a criminal complaint were issued against petitioner. That complaint charged one-count of sexual abuse by a parent, guardian, or custodian. Soon thereafter, on August 29, 2007, petitioner, in the presence of his trial counsel, Mark Frame, made a full confession to Deputy Davis regarding his sexual molestation of K.D. Petitioner's trial counsel later testified that petitioner insisted on making a full confession to the police.

By letter dated October 15, 2007, the prosecutor offered petitioner a plea which would allow petitioner to plead guilty to one count of sexual abuse by a parent, guardian, or custodian and six counts of third degree sexual assault in exchange for a binding sentence of not less than

1

sixteen nor more than fifty years in prison. On January 14, 2008, before petitioner responded to the plea offer, a grand jury returned an eighty-four count indictment against petitioner which included twenty-two counts of sexual assault in the third degree; thirty-one counts of sexual abuse by a parent, guardian, or custodian; and thirty-one counts of incest.

At a February 11, 2008, hearing, petitioner rejected the State's plea offer and sought to plead guilty to all eighty-four counts of the indictment. In response, the trial court cautioned petitioner that if he pled guilty to all eighty-four counts, he was "going to the penitentiary for longer than [sixteen] to [fifty]." Petitioner's counsel responded by questioning the court as to whether it had made up its mind with regard to sentencing prior to a plea. The trial court responded that it had not "made up my mind" about sentencing, but "I'm telling you I could sentence him to—I suppose there is a minimum of at least one year on every one of these, a minimum of [eighty-four] years." In light of petitioner's continuing request to plead to all eighty-four counts, and on the motion of petitioner's counsel, the court ordered petitioner to undergo a psychiatric examination. Also at this hearing, the trial court heard testimony from petitioner's brother who claimed the prosecutor assigned to the case was close friends with K.D.'s biological father's family.[1]

Psychiatrist Dr. Thomas R. Adamski examined petitioner on March 31, 2008. In his report to the court, dated April 24, 2008, Dr. Adamski found that petitioner was able to appreciate the wrongfulness of his behavior at the time he molested K.D. and was mentally competent to stand trial. Dr. Adamski also noted petitioner's continuing desire to plead guilty to all counts. Dr. Adamski filed his report with the trial court on April 28, 2008. However, the trial court did not make a preliminary finding of competency within five days as required by West Virginia Code § 27-6A-3(a).

At a May 30, 2008, hearing ("plea hearing"), petitioner told the trial court that he had rejected the State's plea offer because (1) he wanted to present mitigating evidence that might result in a sentence with a minimum of less than sixteen years; (2) the State reneged on what petitioner believed to be a one-count plea offer; and (3) he did not trust the State's plea offer because of the prosecutor's alleged relationship with K.D.'s father's family.

Prior to taking petitioner's plea, the trial court explained the charges against petitioner and the minimum and maximum penalties for those charges. The trial court also explained that it had complete discretion as to petitioner's sentence, that pleading guilty to all counts would not necessarily result in a less severe sentence than that provided in the plea offer; and that petitioner would be giving up specific rights if he pled guilty. Petitioner acknowledged the court's instructions and, thereafter, pled guilty to all eighty-four counts. The trial court did not make a competency determination during petitioner's plea hearing.

At his September 19, 2008, sentencing hearing, petitioner asserted mitigating circumstances which included that he had been sexually abused as a child. Petitioner's counsel then asked the court to allow petitioner to have contact with his biological son. Thereafter, the

---

[1] The record indicates that K.D.'s uncle (her biological father's brother) had, in the past, been a fraternity brother of the prosecutor assigned to this case.

trial court acknowledged that Dr. Adamski had found petitioner to be mentally competent to stand trial and criminally responsible for his crimes. The trial court also noted that Deputy Davis, the prosecutor, and petitioner's probation officer all recommended lengthy sentences given that petitioner's molestation of his step-daughter was repeated and took place over the course of a year when K.D. was only thirteen and fourteen years old. The trial court then sentenced petitioner to a net effective sentence of not less than thirty-one nor more than seventy-five years in prison. Further, based on petitioner's probation officer's report, the trial court also ordered that petitioner have no contact with K.D., and no contact with his son until the son reached majority.

Attorney James E. Hawkins, Jr. filed petitioner's direct appeal which the Court refused on May 26, 2009.

Petitioner filed the instant habeas action on August 3, 2012. Thereafter, petitioner moved the habeas court for permission to retain medical and legal experts. The habeas court denied those motions by order entered July 3, 2013. Petitioner's omnibus evidentiary hearing was held on January 27, 2014, and February 24, 2014. Shortly thereafter, petitioner moved to expand his habeas record with additional "recently disclosed" medical records. The habeas court denied that motion as well.

On November 30, 2014, the habeas court denied petitioner's petition with one exception: the habeas court found that the portion of the trial court's sentencing order, which forbids contact between petitioner and his minor son, was void given that this penalty was not included in the statutes under which petitioner was indicted. Petitioner now appeals the remainder of the November 30, 2014, order.

We review such appeals under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 418, 633 S.E.2d 771, 772 (2006).

On appeal, petitioner raises six assignments of error. Petitioner first argues that the habeas court erred in failing to find that the trial court violated his due process rights. Specifically, petitioner argues that the trial court failed to sufficiently inquire into the effect on petitioner of the four new psychotropic medications (Naprosyn, Lithium, Zoloft, and Buspar) he was taking on May 30, 2008, when he entered his guilty pleas. Petitioner highlights that these were not the medications he was taking when he was evaluated by Dr. Adamski. Petitioner claims that these new medications made his behavior erratic, affected his cognitive function, and impaired his memory, thus, indicating that his guilty pleas were not made voluntarily, knowingly, or intelligently.

3

Before a court may accept a guilty plea, it must ensure that the defendant is competent to enter the plea. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993). When a court is aware that a defendant is under the influence of medication, it is obligated to inquire whether the defendant is capable of knowingly and voluntarily waiving his constitutional rights. *See U.S. v. Parra-Ibanez*, 936 F.2d 588 (1st Cir.1999); *U.S. v. Damon*, 191 F.3d 561 (4th Cir.1999). In the instant case, before taking petitioner's plea, the trial court inquired about the effect of the petitioner's new medications, as follows:

> TRIAL COURT: Have you . . . taken any drugs or medications in the last [twenty-four] hours?
>
> PETITIONER: Yes
>
> TRIAL COURT: What?
>
> PETITIONER: I have taken Naprosyn, Lithium, Zoloft, and Buspar.
>
> TRIAL COURT: Well, then, the question is, is your mind free and clear at this time?
>
> PETITIONER: I believe so, yes.
>
> TRIAL COURT: Do you understand the nature of these proceedings and the seriousness of this matter?
>
> PETITONER: Yes.
>
> TRIAL COURT: Has this medication . . . affected your ability to appreciate what I am saying and understand what I . . . you . . . the Prosecutor and everyone is saying here? Do you understand what is going on?
>
> PETITIONER: Yeah, I understand.

The trial court then asked petitioner's counsel the following:

> TRIAL COURT: Now, Mr. Frame, are you satisfied that your client is not under the influence . . . and that the medication he has taken has not affected his ability to think and understand and appreciate the nature of these proceedings?
>
> PETITIONER'S TRIAL COUNSEL: Your Honor, as far as I can tell, his mind is so—clear. There are some adverse effects from the medication he is taking, but I believe his mind is clear.
>
> TRIAL COURT: Do you believe he understands what is going on here.
>
> PETITIONER'S TRIAL COUNSEL: I do.

TRIAL COURT: All right. And you believe he is fully cognizant of what is happening and what he intends to do?

PETITIONER'S TRIAL COUNSEL: Yes, Your Honor, I do.

This discourse clearly reveals that, at petitioner's plea hearing, the trial court inquired about the effect of petitioner's new medications on petitioner, and that both petitioner and his counsel admitted that the new medications, although having "some adverse effect," did not negatively impact petitioner's ability to voluntarily, knowingly, or intelligently enter his guilty pleas. Therefore, given that the trial court met its obligation to inquire pursuant to Rule 11 of the West Virginia Rules of Criminal Procedure, and in light of petitioner's and his trial counsel's answers to the court's queries, we cannot say that the habeas court erred in finding that the trial court did not violate petitioner's substantive due process rights in this regard.

Petitioner's second assignment of error has two parts: First, petitioner argues that the habeas court erred in failing to find that the trial court violated petitioner's substantive and procedural due process rights where the trial court (1) did not make a competency finding as required by West Virginia Code § 27-6A-3(a)[2] within five days after receiving Dr. Adamski's report on April 28, 2008, or at petitioner's plea hearing; and (2) did not order another psychiatric evaluation prior to accepting petitioner's guilty pleas. Petitioner also complains that Dr. Adamski failed to file his report with the trial court within ten business days as required by West Virginia Code § 27-6A-2(c).[3]

Petitioner correctly notes that the trial court failed to comply with West Virginia Code § 27-6A-3(a) when it failed to make a preliminary competency finding five days after its receipt of Dr. Adamski's report. That said, we have held that, "[a] trial judge's failure to make a finding on the issue of a criminal defendant's competency to stand trial within five days after the filing of a report by one or more psychiatrists or a psychiatrist and a psychologist . . . will not be considered to be reversible error requiring a new trial absent prejudice to the defendant resulting from such failure. Syl. Pt. 1, *State v. Church*, 168 W.Va. 408, 408, 284 S.E.2d 897, 898 (1981). We have also held that, where a trial judge does not make a finding regarding the defendant's competency within the required five days, "the defendant may request a hearing on that issue . . . at any reasonable time prior to trial." *Id.* at 408, 284 S.E.2d at 898-99.

---

[2] West Virginia Code § 27-6A-3(a) states in relevant part that, "[w]ithin five days of the receipt of the qualified forensic evaluator's report and opinion on the issue of competency to stand trial, the court of record shall make a preliminary finding on the issue of whether the defendant is competent to stand trial."

[3] West Virginia Code § 27-6A-2(c) provides, in relevant part, that

A qualified forensic evaluator shall schedule and arrange for the prompt completion of any court-ordered evaluation . . . and shall, within ten business days of the date of the completion of any evaluation, provide to the court of record a written, signed report of his or her opinion on the issue of competency to stand trial.

5

Here, petitioner failed to request a hearing on the issues of competency before or at his May 30, 2008, plea hearing. Moreover, petitioner was not prejudiced by the trial court's failure to comply with West Virginia § 27-6A-3(a) given that Dr. Adamski found petitioner to be mentally competent, and the trial court ensured that petitioner had voluntarily, knowingly, and intelligently entered his guilty pleas. Thus, we concur with the habeas court's finding that the trial court's noncompliance with West Virginia § 27-6A-3(a) did not violate petitioner's substantive or procedural due process rights.

As for petitioner's argument that the trial court erred in failing to order a new psychiatric evaluation at petitioner's plea hearing, we also find no error. As noted above, the trial court did order a psychiatric evaluation after petitioner attempted to plead guilty to all eighty-four counts of his indictment on January 14, 2008. That report was completed and Dr. Adamski found that, to a reasonable degree of medical certainty, petitioner was able to appreciate the wrongfulness of his behavior at the time he molested K.D. and was mentally competent to stand trial. Dr. Adamski further found that petitioner understood the charges against him; had the capacity to work with his attorney in the preparation of his defense; was able to knowingly and voluntarily enter into a plea agreement; and his acceptance of his involvement in the crimes did not flow from any psychiatric illness. Dr. Adamski also cited to petitioner's continuing desire to plead guilty to all counts. Further, at petitioner's plea hearing, the trial court inquired as to the only change in circumstances petitioner claimed occurred following his March 31, 2008, psychiatric evaluation, i.e. the change in his medications. Moreover, petitioner never contested Dr. Adamski's finding that he was competent and, as noted above, never moved for an evidentiary hearing pursuant to West Virginia Code § 27-6A-3(a) regarding Dr. Adamski's findings. Finally, petitioner's counsel did not seek an additional psychiatric evaluation at petitioner's plea hearing. On this record we cannot say that the habeas court erred in denying relief on this ground.

With regard to petitioner's claim that Dr. Adamski failed to *issue* his report within the required ten business days, we highlight that Dr. Adamski notified the trial court that his report would not be submitted within ten days because he was scheduled to be out of the country during that time frame. Further, although petitioner highlights the report's delayed filing, he cites to no prejudice from the delay. Importantly, the report was filed a full month before petitioner's May 30, 2008, plea hearing and, as we noted above, petitioner never sought a hearing regarding the report. Therefore, we find no error.

Petitioner's second claim under this assignment of error is that the habeas court erred in failing to find that the trial court violated petitioner's substantive due process rights by improperly becoming involved in plea negotiations. In support of his claim, petitioner highlights the following discourse from the February 11, 2008, hearing:

> TRIAL COURT: Now I don't understand why you would want to plead guilty to all of these counts and not accept this plea agreement. That's not very smart. . . .
>
> PETITIONER: Because, sir, I don't believe [the prosecutor] negotiated in good faith.

TRIAL COURT: Well, you do know what is going to happen if you plead guilty to all these counts.

PETITIONER: No, I don't, I mean—

TRIAL COURT: You're going to the penitentiary for longer than 16 to 50.

PETITIONER'S COUNSEL: [I]f the Judge is going to tell us in open Court here today that he's already made his mind up, that he—this defendant would be sentenced to more than [sixteen] year, then it would be stupid for us to enter—

TRIAL COURT: Well, I'm not telling you I made up my mind.

PETITIONER'S COUNSEL: Well, I understand, Judge, and I—

TRIAL COURT: I'm trying to tell you I could sentence him to—I suppose there is a minimum of at least one year on every one of these, a minimum of [eighty-four] years.

PETITIONER'S COUNSEL: The maximum—

PETITIONER: 1,165 years, Judge, we've done the math.

Petitioner also highlights the following statements made by the trial court before it accepted petitioner's plea at the May 30, 2008, hearing:

What you are hoping for and what you may get may be two different things.

. . . .

[I]f I accept your pleas . . . I'm not bound to give you any particular sentence. I could give you a minimum sentence, I could give you a maximum sentence, or something in between.

. . . .

[Y]ou expose yourself to a great deal of punishment by way of imprisonment if you plead guilty to all of these charges. . . .

. . . .

[I]f you plead guilty to all [eighty-four] of these charges, . . . I hope you don't believe that that means you're going to get less than a minimum of [sixteen] to [fifty].

Following each of these statements, that trial court asked petitioner whether he understood the statement; in each instance, petitioner stated that he understood. Petitioner argues that the trial court's statements prove that it was improperly involved in plea negotiations.

Rule 11(e)(1) of the Rules of Criminal Procedure provides, in part, that "[t]he [trial] court shall not participate in any such [plea] discussions." However, in this case, we find that the trial court did not improperly participate in petitioner's plea negations. Instead, the trial court's comments to petitioner reveal that the trial court—at both the February 11, 2008, hearing and at petitioner's plea hearing—sought to impress upon petitioner the potential sentence he faced by rejecting the State's seven-count plea offer and by pleading to all eighty-four counts of the indictment. In fact, the trial court's many comments show its persistence in attempting to ensure that petitioner understood that the court was not bound, in any manner, with regard to sentencing. Rule 11(c)(1) of the Rules of Criminal Procedure contemplates such a colloquy ("Before accepting a plea of guilty . . . the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]"). *See also State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 197 n. 15, 465 S.E.2d 185, 197 n. 15 (1995) (stating that a trial court is expected to take an active role in evaluating a plea agreement once it is disclosed). Consequently, we conclude that the habeas court did not err in finding that the trial court's comments did not violate petitioner's substantive and procedural due process rights.

In his third assignment of error, petitioner claims that the habeas court erred in failing to find that both his trial counsel and appellate counsel provided ineffective assistance. Petitioner claims that his trial counsel was ineffective because he (1) failed to move to disqualify the prosecutor due to the prosecutor's alleged relationship with K.D.'s biological father's family; (2) failed to enforce the State's alleged promise to charge petitioner with only one count; (3) failed to negotiate a non-binding plea; (4) failed to protect petitioner during an interview with the police; and (5) failed to maintain meaningful adversarial testing. Petitioner claims that his *appellate* counsel was ineffective because he failed to consult with petitioner prior to filing petitioner's appeal and failed to raise issues on appeal.

> An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially.

*State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995). Furthermore,

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

8

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 6, 459 S.E.2d 114, 117 (1995). We have also said,

> In deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

Syl. Pt. 5, *Legursky*, 195 W.Va. at 317, 465 S.E.2d at 419.

With regard to petitioner's argument that his trial counsel was ineffective for failing to move to disqualify the prosecutor, petitioner claims that if the prosecutor had been disqualified he might have considered the State's plea offer. Instead, he claims he rejected the plea offer because he believed that the prosecutor's close relationship with K.D.'s family caused the prosecutor to offer an unduly harsh plea.

At petitioner's omnibus evidentiary hearing, the prosecutor testified that (1) he had a duty to consult with K.D., her mother, and her biological father; (2) petitioner misrepresented any interactions he may have had with K.D.'s family; (3) he had no conflict of interest; (4) another prosecutor may not have offered such a reasonable plea; and (5) it was a reasonable trial strategy for petitioner's trial counsel not to seek his disqualification. Petitioner's trial counsel testified that he made a strategic decision not to seek to disqualify the prosecutor because he was a known entity, and a new prosecutor might treat petitioner more harshly. In the order on appeal, the habeas court found that the only first-hand evidence regarding any conflict of evidence was petitioner's brother's testimony at the February 11, 2008, hearing, that he had seen the prosecutor and K.D.'s father having lunch together some twenty years before. The habeas court also noted that, at petitioner's plea hearing, trial counsel testified that he had no basis upon which to seek a disqualification of the prosecutor. Based on this record, the habeas court found that petitioner was not denied effective assistance of trial counsel merely because his trial counsel did not seek to disqualify the prosecutor.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Miller*, 194 W.Va. at 6-7, 459 S.E.2d at 117-18.

In light of the facts that (1) the only first-hand evidence of any relationship between K.D.'s family and the prosecutor was twenty years old, and (2) that the prosecutor was a known entity who offered petitioner a seven-count plea to an eighty-four count indictment, we cannot say that trial counsel's strategic decision not to move the trial court to disqualify the prosecutor was outside the broad range of professionally competent assistance. Thus, like the habeas court,

we find that trial counsel's performance in this regard was not deficient under an objective standard of reasonableness and, therefore, petitioner was not denied effective assistance on this ground.

Petitioner next argues that his trial counsel was ineffective because he failed to enforce the State's promise to limit the charges against petitioner to one count. Petitioner bases this claim on his brother's testimony regarding a meeting his brother had with Deputy Davis and an assistant prosecutor prior to petitioner's confession to the police. Petitioner claims that, at that meeting, the deputy offered petitioner a one-count *plea* in exchange for petitioner's confession. Petitioner argues he later rejected the State's seven-count plea offer in light of the deputy's and/or assistant prosecutor's promise of a one-count plea offer. Petitioner claims that he had a constitutional right to the enforcement of the one-count plea agreement because he relied on it to his detriment.

Petitioner's brother's testimony is the only evidence in the record on appeal in support of this assignment of error. All of the other evidence presented at the omnibus hearing contradicts the brother's testimony. For example, petitioner's trial counsel testified that neither the police nor the State offered petitioner a one-count plea and that there was no plea offer on the table when petitioner voluntary confessed his crimes. Deputy Davis also testified that he never made any such promise to petitioner or his brother. During petitioner's testimony, he conceded that he was not present when any such offer was made and that the State never presented a one-count plea offer to him directly. The habeas court found that petitioner's brother likely misunderstood the deputy or the assistant prosecutor's statement that petitioner would initially be charged with one count and thereafter, the prosecutor, in his discretion, would address any additional charges. Given this record, we cannot say that the habeas court erred in concluding that neither Deputy Davis nor the assistant prosecutor promised petitioner's brother that petitioner would be allowed to plea to one-count. Thus, we find that petitioner's trial counsel was not ineffective for failing to attempt to enforce a non-existent plea offer.

Petitioner next argues that his trial counsel was ineffective because he failed to negotiate or to attempt to negotiate a non-binding plea agreement. At the omnibus hearing, petitioner's trial counsel testified (1) that the judge in this case "would not accept a non-binding plea"; (2) that he repeatedly talked to the prosecutor in an attempt to negotiate a better plea than the seven-count plea; and (3) that he was "sure" he had considered a non-binding plea, but he did not specifically recall discussing a non-binding plea with the State. The prosecutor testified that petitioner's counsel approached him regarding a plea offer and that the State responded with the seven-count plea offer. The habeas court found that "the record suggests that the absence of a non-binding plea offer was due to the State's apparent refusal to budge from its offer of a binding plea."

Here, the record on appeal shows that the State presented only one plea offer, the seven-count offer, to petitioner. Thereafter, petitioner's trial counsel repeatedly sought a more favorable plea offer, but the State was not forthcoming. The State's decision not to offer petitioner a more favorable or a non-binding plea offer cannot be held against petitioner's trial counsel. Hence, we do not find that trial counsel's performance was deficient with regard to the absence of a non-binding plea offer.

Petitioner next argues that his trial counsel was ineffective because he encouraged and arranged for petitioner to give a voluntary statement to the police when counsel knew petitioner was suicidal and was taking psychotropic medications. Petitioner argues that the outcome of his case would have been different had he not confessed.

The evidence in the record on appeal reveals that, at petitioner's omnibus hearing, trial counsel testified that, from his very first meeting with petitioner, petitioner was insistent on confessing his crimes to the police so that he would have no "path of retreat." However, trial counsel did admit that he did not try to talk petitioner out of confessing to the police due to petitioner's insistence on making such a confession. That said, the record on appeal shows that well before trial counsel was involved in petitioner's case, (1) petitioner had fully confessed his crimes to his wife and attempted to confess to Deputy Davis over the phone; and (2) the police had taken a statement from petitioner's wife regarding petitioner's confession, and a statement from K.D. who detailed petitioner's many crimes against her. Thus, even *if* trial counsel had attempted to talk petitioner out of making a confession to the police, and *if* petitioner had not confessed, there was no reasonable probability that the result of the petitioner's proceedings would have been different. Thus, we deny relief on this ground.

Petitioner's last argument with regard to trial counsel is that trial counsel was ineffective because he failed to maintain the character of "meaningful adversarial testing" in the trial court and, therefore, the process was presumptively unreliable. The United States Supreme Court addressed meaningful adversarial testing in criminal trials in *United States v. Cronic*, 466 U.S. 648 (1984), In *Cronic*, the Supreme Court opined that

> the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Anders v. California*, 386 U.S. 738, 743 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing . . . . But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cronic*, 466 U.S. at 656-57 (footnotes omitted). Here, petitioner claims that trial counsel failed to maintain the character of meaningful adversarial testing because trial counsel failed to object to (1) a pre-sentence report which wrongfully characterized petitioner as a "sexual sadist," (2) the claim that petitioner had breached his position of trust as a teacher, and (3) the recommendation that petitioner have no contact with his minor son. Petitioner also argues that trial counsel failed to provide him with a defense strategy.

Where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at 659. Here, trial counsel faced an uphill battle with regard to adversarial testing given that petitioner repeatedly confessed his crimes, rejected the State's plea offer, adamantly refused to go to trial, and opted to plead guilty to all eighty-four counts of his indictment. Nevertheless, at petitioner's sentencing hearing, trial counsel challenged the claims that petitioner was a "sexual sadist," that he breached his position

of trust as a teacher, and that he should have no contact with his son. Specifically, at the sentencing hearing, trial counsel elicited testimony showing that the "sexual-sadist" finding resulted from petitioner's very short stay at one psychiatric facility and that a psychiatrist at a second facility, where petitioner had a lengthy stay, did not make a "sexual sadist" finding. Trial counsel also elicited testimony that there was no evidence in the record showing that petitioner had breached his duty of trust when he was a teacher. Finally, trial counsel contested any imposition of a no-contact provision regarding petitioner's son on the ground that it was outside the trial court's statutory authority. In the alternative, trial counsel asked the court to defer the "no contact" issue until further evidence could be adduced on that issue. On this record, it is patently clear that trial counsel did not "entirely fail to subject the prosecution's case to meaningful adversarial testing." Consequently, we do not find that petitioner's constitutional rights were denied by trial counsel's performance or that the adversary process in petitioner's case was "presumptively unreliable."

As for petitioner's claim that trial counsel failed to provide him with a defense strategy, the record on appeal shows that trial counsel used petitioner's confession as a significant part of his defense strategy at petitioner's sentencing hearing. At that hearing, trial counsel repeatedly petitioned the trial court for leniency given petitioner's insistence on pleading guilty that spared his wife and K.D. from the burden of a trial. Trial counsel also presented the testimony of petitioner's brother and sister at the sentencing hearing; both testified to petitioner's remorse for his crimes. Thus, as did the habeas court, we reject petitioner's claim that trial counsel did not have a defense strategy. Accordingly, we reject petitioner's claim that his trial counsel had no defense strategy and that trial counsel's performance fell below an objective standard of reasonableness with regard to a defense strategy.

Petitioner also argues that the habeas court erred in failing to find that his *appellate* counsel provided ineffective assistance. Petitioner claims that appellate counsel was ineffective because he (1) failed to meet with him in person, as proved by the visitors' logs from the correctional facility where petitioner was housed at that time; (2) failed to challenge the "no contact" provision in petitioner's sentencing order given that the habeas court later found that provision to be outside of the trial court's statutory authority; and (3) failed to raise the issue of ineffective assistance of trial counsel in his direct appeal to this Court.

With regard to a face-to-face meeting, petitioner's appellate counsel testified at petitioner's omnibus hearing that it was his habit to meet with appellate clients at the correctional facility in which they are housed and that he recalled having such a meeting with petitioner. Appellate counsel also testified that he recognized petitioner, but claimed that petitioner had gained weight since appellate counsel had last seen him. Appellate counsel then testified that he sent petitioner a detailed letter about his appeal; that he "vaguely" recalled receiving a telephone call from petitioner regarding the appeal; and that he spoke with petitioner's sister or another family member about the appeal. Appellate counsel particularly remembered petitioner's insistence on challenging the "no contact" provision in the sentencing order. The record on appeal shows that appellate counsel included an assignment of error in petitioner's direct appeal regarding the "no contact" provision, although that assignment of error was based on grounds other than insufficient statutory authority. The habeas court (1) found that it was unclear whether the subject visitors' log covered the entire time petitioner was housed at the correctional facility,

and (2) concluded that petitioner presented insufficient evidence that appellate counsel was ineffective.

It is unclear from the record on appeal whether appellate counsel met in person with petitioner. Appellate counsel says he did, petitioner says otherwise. In any event, the evidence in the record on appeal shows that, at a minimum, appellate counsel (1) connected with petitioner in a writing that detailed potential assignments of error and explained the differences between a direct appeal and a post-conviction petition for habeas corpus relief, and (2) filed petitioner's direct appeal which included, among other things, an assignment of error regarding the "no contact" provision in the sentencing order. In light of this record, we cannot say that appellate counsel's performance was deficient under an objective standard of reasonableness. Therefore, we concur with the habeas court's finding that petitioner failed to present sufficient evidence to support his claim that he was denied effective assistance of appellate counsel.

As for petitioner's claim that appellate counsel was ineffective because he failed to raise the issue of ineffective assistance of trial counsel in petitioner's direct appeal, we have said,

> [i]n a direct appeal . . . it is often difficult, if not impossible, for this Court to determine "whether the attorney's performance below was ineffective or merely the result of trial strategy." *State v. Bess*, 185 W.Va. 290, 293, 406 S.E.2d 721, 724 (1991). In past cases, this Court has cautioned that "[i]neffective assistance claims raised on direct appeal are presumptively subject to dismissal." *State v. Miller*, 197 W.Va. 588, 611, 476 S.E.2d 535, 558 (1996). *See City of Philippi v. Weaver*, 208 W.Va. 346, 351, 540 S.E.2d 563, 568 (2000). Such claims are more properly raised in a post-conviction collateral proceeding "to promote development of a factual record sufficient for effective review." *Miller*, 197 W.Va. at 611, 476 S.E.2d at 558. We have explained that
>
> > "[i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim."
>
> Syl. Pt. 10, *State v. Hutchinson*, 215 W.Va. 313, 599 S.E.2d 736 (2004) (*quoting* Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992)).

*State v. Woodson*, 222 W.Va. 607, 621, 671 S.E.2d 438, 452 (2008). In light of these oft repeated statements, we reject petitioner's argument that appellate counsel was ineffective because he opted not to raise ineffective assistance of trial counsel as an assignment of error in petitioner's direct appeal.

Petitioner's fourth assignment of error has two parts: First, petitioner argues that the habeas court erred in failing to find that the trial court (1) based his sentence on impermissible factors, and (2) erred in imposing a sentence that is subjectively and objectively disproportionate.

Petitioner claims that the trial court based his sentence on the following two impermissible factors: (1) the trial court's erroneous belief that petitioner had violated his position of trust as a teacher; and (2) the trial court's wrongful retaliation against petitioner for his rejection of the State's plea offer. Petitioner contends that because the trial court based its sentence on impermissible factors, this Court may review his sentence on appeal even though it is within statutory limits. *See* Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 366, 287 S.E.2d 504, 505 (1982) (providing that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review").

At sentencing, the trial court found that "[petitioner] is a teacher, or was a teacher, in a position of trust, a position that he violated severely." At petitioner's omnibus hearing, his probation officer testified that she investigated, but discovered no claims that petitioner had violated his position of trust at school. The habeas court concluded that the trial court's finding that petitioner had breached his position of trust with a student in his school was error. Nevertheless, the habeas court concluded that petitioner did violate *a* position of trust, that of being K.D.'s step-father. Accordingly, the habeas court ruled that petitioner's status as a teacher was *not* an impermissible factor to consider given that "petitioner's position as an educator . . . an individual entrusted with guiding children, is relevant to the consideration of his sentence for sexual offenses committed against a child, despite [the fact] that [K.D.] was not [petitioner's] student."

We first note that the "breach of trust" factor was only one of a host of factors the trial court considered in imposing petitioner's sentence. Those other factors included: (1) the number, the continued nature, and the severity of petitioner's crimes; (2) that K.D.'s mother sought a lengthy sentence given the ongoing trauma suffered by K.D., herself, and her son as a result of petitioner's crimes; (3) that, prior to entering his plea, petitioner's bond was revoked for his repeated attempts to contact K.D. through cards and gifts he sent through his young son; (4) that, at sentencing, petitioner's sister testified that petitioner sexually molested her when she was child and when he was four years older than she; and (5) a psychiatrist's report that revealed petitioner was "addicted to pornography" and "was sexually preoccupied and distorted in his views of sexual behavior as harmless to the victims." We also note that, in his brief to this Court, petitioner cites to no law that precludes a trial court from considering the fact that a serial child molester was working as a school teacher. Thus, in this case and on these facts, we cannot say that the habeas court's consideration of petitioner's employment as a teacher was impermissible with regard to sentencing.

Petitioner next argues that the trial court retaliated against him in sentencing because he rejected the State's plea offer. In support of this claim, petitioner first cites to the various statements made by the trial court at sentencing, that we excerpted above. Our careful review of the transcript from petitioner's sentencing hearing shows that these comments related to the posture of the case or to the trial court's efforts at petitioner's plea hearing to ensure that

14

petitioner's plea was voluntarily, knowingly, and intelligently given. Thus, we find that none of the comments to which petitioner cites were retaliatory in nature.

Petitioner next asserts that the length of his sentence proves it was retaliatory given that trial court imposed a sentence that was longer than that provided in the plea offer, i.e. not less that thirty-one nor more than seventy-five years in prison (imposed) versus not less than sixteen nor more than fifty years in prison (the plea offer). Here, petitioner's potential maximum sentence was not less than 487 nor more than 1,195 years in prison. Therefore, on its face, petitioner's sentence does not appear to be retaliatory given that the trial court could have imposed a sentence more than fifteen times longer than the one it did impose and still have imposed a sentence within statutory limits. Further, as noted above, the trial court went into great detail regarding its reasons for the length of petitioner's sentence. Given this record, we find that petitioner fails to support his assertion that the trial court's sentence was retaliatory. Accordingly, we reject petitioner's argument that his sentence was based on impermissible factors.

Petitioner's last argument with regard to sentencing is that his sentence is subjectively and objectively disproportionate.

> There are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution. *Accord, Stockton v. Leeke*, 269 S.C. 459, 237 S.E.2d 896, 897 (1977). The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):
>
>> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*State v. Cooper*, 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983). However, we have also said, "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, *Wanstreet*, 166 W.Va. at 523, 276 S.E.2d at 207. Here, petitioner's potential sentence had a fixed maximum and petitioner did not receive a life recidivist sentence; accordingly, we decline to apply our proportionality standards in this case.

Petitioner's fifth assignment of error is that the habeas court erred in denying his motion for the approval of experts. Specifically, petitioner argues that the habeas court erred in denying his request for a medical expert because he was not competent at the time of his plea and he needed a medical expert to assess the effect of the four new drugs he was taking at that time. Petitioner also argues that the habeas court erred in denying his motion for approval of a legal expert given his numerous allegations of ineffective assistance and the "plethora of facts to be reviewed."

With regard to the appointment of a medical expert, the habeas court concluded that it was able to properly evaluate petitioner's competency-based claims without such an appointment, and that petitioner had ample resources at his disposal regarding the issue of whether his new medications had adversely affected him. Those resources included experienced habeas counsel, the transcripts from his proceedings, and medical literature. The habeas court also noted that petitioner's counsel submitted medical literature to the court on petitioner's behalf.

We concur with the habeas court's finding that petitioner had ample resources at his disposal regarding his new medications. As for petitioner's claim that he was "not competent" at the time of his plea hearing, nothing in the record on appeal supports petitioner's claim. With regard to petitioner's assertion that he needed a medical expert to determine the effect of the four new drugs he was taking *at the time* he entered his plea, we find that such a task would be impossible given that no expert can travel back in time to make such a determination. Hence, we find no error in the habeas court's denial of petitioner's motion for the appointment of a medical expert.

As for the habeas court's denial of petitioner's request for the appointment of a legal expert, it found such an appointment was "not reasonably necessary" given that it had appointed experienced habeas counsel who, at petitioner's omnibus hearing, could knowledgeably examine trial counsel, call other witnesses, and raise any necessary legal defenses. As for petitioner's claim that he needed additional legal counsel due to his "numerous allegations of ineffective assistance and the plethora of facts to be reviewed," petitioner does not allege that his habeas counsel had insufficient time to review his allegations of ineffective assistance or to review the facts of his case. Accordingly, we find no error.

Petitioner's sixth and final assignment of error is that the habeas court erred in refusing his motion, pursuant to Rule 8(a)[4] of the West Virginia Rules Governing Post-Conviction Habeas Corpus, to supplement the record with what he claimed were newly-discovered mental health records. The habeas court denied the motion on the following ground:

[T]he representations made in [p]etitioner's [m]otion would suggest that the additional medical records are merely cumulative in nature. The [p]etitioner has

---

[4] Rule 8(a) of the West Virginia Rules Governing Post-Conviction Habeas Corpus provides that, "[i]f the petition is not summarily dismissed, the court may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition."

indicated that the additional records do not contain any new, different, or contradictory information regarding the [p]etitioner and that the inclusion of such records would only supplement those records already before the court.

Petitioner does not claim that the habeas court's finding was erroneous, nor does he claim that the medical records he sought to admit added anything new, different, or contradictory to the records already before the habeas court. Consequently, because petitioner fails to contradict—in any fashion—the habeas court's findings, we cannot say that the habeas court erred in denying petitioner's motion to supplement the record below.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 17, 2016

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II